UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**JANE DOE,**
as parent, natural guardian and next friend of **JOHN DOE**,

    Plaintiff,

v.                                                               Civil Action No. 3:21-cv-<u>00031</u>

**CABELL COUNTY BOARD OF EDUCATION** and
**JASON CURRY**,

    Defendants.

## COMPLAINT

Plaintiff Jane Doe,[1] as parent, natural guardian and next friend of John Doe, alleges the following against Defendant Cabell County Board of Education and Defendant Jason Curry:

*Parties, Jurisdiction & Venue*:

1. Plaintiff Jane Doe was and is the mother of a minor, John Doe ("the victim"), at all times pertinent hereto, and they were and are citizens and residents of Cabell County, West Virginia. The victim is a minor under the age of 18.

2. Defendant Cabell County Board of Education (hereinafter referred to as "Defendant Board" or "BOE") is the county agency that governs the public schools in Cabell County, West Virginia. At all times mentioned herein, Defendant Board, a West

---

[1] Due to the sensitive nature of the issues in this case and the victim's young age, Plaintiff Jane Doe and her son, John Doe, are obviously pseudonyms to protect the victim's privacy from being further violated. However, Defendants know their identities and can defend this case without prejudice.

Virginia corporation, controlled and maintained the school at issue in Cabell County, West Virginia.

3. Defendant Jason Curry was employed by the Defendant Cabell County Board of Education and as such was an agent of the Board. Mr. Curry resided and continues to reside in Cabell County.

4. Plaintiff pleads federal claims inasmuch as she seeks damages pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehab Act. Accordingly, federal jurisdiction exists. 28 U.S.C. §§ 1331, 1367.

*Facts*:

5. The victim was and is a student of Cabell County schools and has severe special needs requiring an aide.

6. On or about October 15, 2019, Jason Curry, an employee of the Board and student aide to the victim, touched the then 12 year-old victim in a profoundly inappropriate manner.

7. A witness statement from the special needs teacher (later described herein as "Witness #2") and an employee of the Defendant Board, later described the events of October 15, 2019 as follows: "I walked into the sensory room in my classroom. Jason Curry was sitting in an armless chair. His student [the victim] . . . was sitting on his lap, face to face in a straddle position. Jason was holding [the victim, and the victim] . . . was bending backwards and Jason was pulling him back up."

8. The victim, though 12 years old at the time, was unable to tell his parents what occurred because of his severe disability.

9. Neither of the victim's parents were told or otherwise advised by the school about this incident involving the victim that occurred on October 15, 2019.

10. At the time the incident occurred on October 15, 2019, it was not documented by school personnel.

11. On November 22, 2019, another incident occurred involving the victim and his assigned aide, Jason Curry. According to an Incident Report completed by the Cabell County Sheriff's Department, Jason Curry engaged in "Forcible Fondling" of the victim on that date.

12. That afternoon of November 22, 2019, the Principal notified the Cabell County Sheriff's Department of the incident.

13. The Narrative section of the Incident Report compiled by the Cabell County Sheriff's Department based upon the witness accounts provided as follows:

On 11/22/2019 at approximately 1520 hours this Deputy was advised by the . . . Principal . . . of an alleged incident involving sexual misconduct towards a special needs student by a teachers aid. The Complainant stated that Victim . . . (Juvenile), was witnessed sitting on the lap of a teachers aid, (Suspect) Jason Curry, and grinding crotch to crotch. The Complainant further advised that as soon as he was made aware of the situation he brought the Suspect into his office and placed him on administrative leave, with pay, pending an investigation. The incident was witnessed by (Witness [#1]) . . . [who] advised that she walked into the sensory room, which is a special room for special needs students to decompress and relax when they are acting out or feeling anxiety. When . . . [Witness #1] walked into the sensory room she witnessed the Victim sitting on the lap of the Suspect, face to face, and straddled crotch to crotch. The Suspect had his hands on the waist and hips of the Victim holding him in place. The Victim had his hands around the neck of the Suspect. The Victim appeared to be dry humping or gyrating on the genital region of the Suspect. When . . . [Witness #1] walked into the room it startled the Suspect, who immediately let go of the Victim. The Victim, according to . . . [witness #1], got up and ran out of the room. The Suspect had a look of surprise and was blushing. [Witness #1] . . . further states that the Suspect had his legs pinched together as if he had to urinate or was hiding an erection. [Witness #1] . . . also stated that the Suspect waited until she walked out of the room to stand up and remove himself from the room, even though he is assigned as a one on one aid to the Victim.

> According to Witness [#2] . . . (Special Needs Teacher), there is no circumstance that the Victim would be alone or out of the presence of his assigned aid. Once ... [Witness #1] left the room she states that the Suspect got up and walked out of the room quickly, made contact with the Victim, and left the room with him to take him on a walk. [Witness #1] . . . immediately reported the incident to . . . [Witness #2]. The two of them took the incident to the Assistant Principal, . . . who reported it to the [Principal] . . . . There are voluntary statements provided with this report that were made by the Suspect and both Witnesses.

(Incident Rept. at 3 of 4).

13. This November 2019 incident was relayed to the victim's parents that day, and the principal mentioned in passing to the victim's parents that he previously advised Jason Curry not to let the victim sit on his lap.

14. Also, on November 22, 2019, an Incident Report was prepared by school personnel regarding the events of October 15, 2019; however, the details of that October 15, 2019 incident were not shared with the victim's parents.

15. On November 25, 2019, the Cabell County Prosecutor charged Jason Curry with Sexual Abuse in the Second Degree.

16. During a meeting between the parents of the victim and the Cabell County Prosecutor's Office in approximately February 2020, the victim's parents learned *for the first time* of the precise incident involving their son, the victim, that occurred on October 15, 2019 from the Prosecutor's Office. Prior to this meeting, the Defendant Board had never told the victim's parents about the details of what happened in October 2019 and the victim's parents had not seen the incident report for the incident that occurred on October 15, 2019. Instead, the victim's parents had previously been told by the principal only that he had advised the aide, Jason Curry, not to let the victim sit on his lap.

17. Sometime thereafter, the victim's parents (Jane Doe and her husband) also learned that an aide in the victim's general education room told the aide and teacher in the adjacent special needs room that she and the teacher in the general education room thought Jason Curry "was doing things" to the victim.

18. Further, Defendants and their agents are mandatory reporters of sex crimes against minors. Yet, the original assault that occurred in October 2019 was not reported to the authorities.

*Claims*:

### (COUNT I – VIOLATION OF 42 U.S.C. § 1983)

19. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

20. The actions of Defendants violated the federal constitutional rights guaranteed to Plaintiff and the victim under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

21. As a result of Defendants' misconduct and clearly-established constitutional violations, Plaintiff suffered damages.

### (COUNT II - STATE CONSTITUTIONAL TORT)

22. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

23. The actions of Defendants violated the state constitutional rights guaranteed to Plaintiff and the victim under Article III, Sections 1, 5, 10, and 14, and Article XII, Section 1 of the West Virginia Constitution.

24. As a result of Defendants' misconduct and clearly-established state constitutional violations, Plaintiff suffered damages.

### (COUNT III – NEGLIGENCE)

25. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

26. Defendants owed Plaintiff a duty.

27. Defendants breached their duties by, *inter alia*, (a) failing to prevent the victim from being sexually assaulted, (b) failing to take steps to stop the sexual assaults suffered by the victim, and (c) failing to report the initial sexual assaults so that the victim would not have had to endure additional sexual assaults.

28. The negligence of Jason Curry occurred while he was on the grounds of the school building.

29. Plaintiff and the victim suffered damages proximately caused by Defendants' negligence.

### (COUNT IV - TORT OF OUTRAGE/RECKLESS INFLICTION OF EMOTIONAL DISTRESS)

30. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

31. Defendants' extreme and outrageous misconduct toward the victim and Plaintiff was unsettling given the circumstances and caused severe emotional distress and bodily harm.

32. Defendants' misconduct as aforesaid caused the victim and Plaintiff to suffer damages.

### (COUNT V - DISABILITY DISCRIMINATION IN VIOLATION OF WEST VIRGINIA HUMAN RIGHTS ACT)

33. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

34. Defendants did not advise Plaintiff's parents with respect to the original incident that occurred on October 15, 2019 because Defendants knew the victim could not communicate what had occurred to his parents or others because of his disability.

35. Defendants otherwise took advantage of Plaintiff because of his disability.

36. Defendants' disability discrimination violated the West Virginia Human Rights Act, *W. Va. Code* § 5-11-1, *et seq.*

37. Plaintiff and the victim suffered damages as a result of the aforesaid disability discrimination committed by Defendants.

### (COUNT VI - DISABILITY DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT)

38. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

39. Title II of the Americans with Disabilities Act ("ADA") prohibits public entities, including public schools, from discriminating against students on the basis of their disabilities. 42 U.S.C. § 12132 *et seq.* It requires public schools to modify their policies, practices, and procedures as needed to avoid discrimination, and to provide students with disabilities equal educational opportunities. *Id.*

40. Defendants did not advise Plaintiff's parents with respect to the original incident that occurred on October 15, 2019 because Defendant knew the victim could not communicate what had occurred to his parents or others because of his disability.

41. Defendants otherwise took advantage of Plaintiff because of his disability.

42. Defendants' disability discrimination violated the Americans with Disabilities Act.

43. Plaintiff and the victim suffered damages as a result of the aforesaid disability discrimination committed by Defendants.

**(COUNT VII - VIOLATION OF THE REHAB ACT)**

44. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

45. Section 504 of the Rehab Act and Title II of the ADA prohibit public entities, including public schools, from discriminating against students on the basis of their disabilities. 29 U.S.C. § 794; 42 U.S.C. § 12132 *et seq.* They require public schools to modify their policies, practices, and procedures as needed to avoid discrimination, and to provide students with disabilities equal educational opportunities. *Id.*

46. The victim is an "otherwise qualified individual with a disability" within the meaning of Section 504. 29 U.S.C. §§ 794, 705(20). His disability substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(A). As a school-age child who lives in Cabell County, the victim is qualified to participate in the Board's educational programs and services. 34 C.F.R. § 104.3(l)(2).

47. Defendant Board is a recipient of federal financial assistance subject to Section 504. 29 U.S.C. § 794(b)(2)(B).

48. By the acts and omissions alleged herein, the BOE has discriminated against the victim in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and its implementing regulations on the basis of his disability.

49. Defendants' disability discrimination violated the Rehab Act.

50. Plaintiff and the victim suffered damages as a result of the aforesaid disability discrimination committed by Defendants.

### (COUNT VIII - CIVIL ASSAULT)

51. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52. Defendants intentionally attempted or threatened to inflict injury on the victim and Plaintiff.

53. Defendants had an apparent ability to cause the harm.

54. Defendants' misconduct caused and created a reasonable apprehension of bodily harm or offensive contact in the victim.

55. Plaintiff and the victim suffered damages as a result of the aforesaid civil assault.

### (COUNT IX - CIVIL BATTERY)

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

57. Defendants intentionally touched the victim in a harmful or offensive manner, and without the consent of the victim or his parents.

58. Plaintiff and the victim suffered damages as a result of the aforesaid civil battery.

WHEREFORE, Plaintiff Jane Doe, as parent, legal guardian and next friend of John Doe, demands judgment against the Defendant Cabell County Board of Education and Defendant Jason Curry in an amount to fully and fairly compensate the victim for damages, including court costs, attorney fees, economic damages, and non-economic damages and such further relief as the Court may deem appropriate. Plaintiff Jane Doe, as parent and legal guardian of John Doe, also demands judgment against Defendant Cabell County Board of Education and Defendant Jason Curry for *punitive damages* for their reprehensible, willful, wanton, and malicious conduct that was in blatant and intentional disregard of the rights owed to the victim.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

> **JANE DOE,** as parent and legal guardian of
> **JOHN DOE**, *Plaintiff*,
> --By Counsel–

/s/ Robert M. Bastress III
_____
Robert M. Bastress III (W.Va. Bar # 9616)
**DiPIERO SIMMONS McGINLEY & BASTRESS, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133
rob.bastress@dbdlawfirm.com
*Counsel for Plaintiff*