IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JANE DOE and J. DOE,
as parent, natural guardians
and next friends of JOHN DOE,

               Plaintiffs,

v.                                  CIVIL ACTION NO.  3:21-0031

CABELL COUNTY BOARD OF EDUCATION and
JASON CURRY,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Cabell County Board of Education's ("CCBOE")
Motion to Dismiss Amended Complaint (ECF No. 49). For the reasons herein, the Motion is
**GRANTED IN PART** and **DENIED IN PART**.

**I. FACTUAL BACKGROUND**

On October 6, 2021, Plaintiffs Jane Doe and her husband J. Doe filed an amended
complaint on behalf of their minor son, John Doe. Plaintiffs alleged that their son, a severe-
special-needs middle schooler at a Cabell County school, was inappropriately touched by his
teacher's aide, Mr. Curry, on two separate occasions. *See e.g*., Am. Compl. The first incident
occurred on October 15, 2019. *See id*. ¶ 6. A special-needs teacher witnessed the event. *Id*. ¶ 7.
The victim, who is nonverbal, was unable to tell his parents about the assault; the victim's
parents were not told or otherwise advised by the school about the incident. *Id*. ¶¶ 8-9. School
personnel did not document the October incident. *Id*. ¶ 10.

A second incident of inappropriate touching occurred on November 22, 2019. *Id*. ¶ 11. The school principal reported the second incident to the Cabell County Sheriff's Department. *Id*. ¶ 12. The Sheriff's Department created an incident report of "forcible fondling" based on witness accounts. *Id*. ¶¶ 11, 13. In a meeting on the same day, the principal advised Plaintiffs of the second incident and mentioned in passing that he had previously advised Curry not to let John Doe sit on his lap. *Id*. ¶ 14. On November 22, 2019, school personnel also prepared an incident report regarding the events in October, though those details were never shared with the victim's parents. *Id*. ¶ 15.

On November 25, 2019, the Cabell County prosecutor charged Curry with sexual abuse. *Id*. ¶ 16. At a meeting with the Prosecuting Attorney's office, Plaintiffs learned for the first time of the October incident. *Id.* ¶ 17. Plaintiffs had not previously been advised of details, nor had they seen an incident report regarding the events. *Id*. Soon thereafter, Plaintiffs learned that an aide in the victim's general education room told another aide and teacher that she suspected Curry was "doing things" to the victim. *Id*. ¶ 18. Despite the CCBOE (and its agents) being mandatory reporters of sex crimes against minors, the original October assault was not reported to the authorities. *Id*. ¶ 19. The CCBOE also did not have video cameras in special-needs self-contained classrooms, as required by West Virginia law. *Id*. ¶ 20.

Plaintiffs filed a complaint alleging the following causes of action against Curry and the CCBOE: Violation of 42 U.S.C. § 1983 (Count I); State Constitutional Tort (Count II); Negligence (Count III); Tort of Outrage/Reckless Infliction of Emotional Distress (Count IV); Disability Discrimination in Violation of West Virginia Human Rights Act (Count V); Disability Discrimination in Violation of Americans with Disabilities Act (Count VI); Violation of the Rehabilitation Act (Count VII); Civil Assault and Aiding and Abetting Civil Assault (Count

VIII); Civil Battery and Aiding and Abetting Civil Battery (Count IX). Defendant CCBOE moved to dismiss all counts against it for failure to state a claim, except for the claim asserted in Count III.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

## III. ANALYSIS

A. Count I: 42 U.S.C. § 1983

As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. *Id*. at 694. Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit Court of Appeals has clarified that:

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). The Fourth Circuit has noted that "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Baltimore Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). In this context, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Id.*

Defendant argues that Plaintiffs have failed to allege facts sufficient to support a municipal liability claim. *See* Def.'s Mem. at 4-6, ECF No. 50. There is no challenge to any formally adopted policy of the CCBOE. *See* Pls.' Resp. at 5-11, ECF No. 28.[1] Instead, Plaintiffs allege

---

[1] Plaintiffs' Renewed Response (ECF No. 56) incorporates by reference their original Response (ECF No. 28) but does not restate those arguments and only addresses the *Monell*

that the CCBOE had an unofficial custom of deliberate indifference and failure to respond to abuse by employees and failed to train its employees in preventing and reporting sexual abuse. Am. Compl. ¶¶ 21-34.[2]

With respect to Plaintiffs' failure-to-train allegations, the Court begins by acknowledging "that the inadequacy of [] training may serve as the basis for § 1983 liability" where "such inadequate training can justifiably be said to represent 'city policy.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This standard requires Plaintiffs to allege "that a municipal governing body ... has followed a policy of inadequate training" for duties for which "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need.'" *Revene v. Charles Cnty. Com'rs*, 882 F.2d 870, 874–75 (4th Cir. 1989). In meeting this burden, "[a] single act ... alleged cannot suffice, standing alone, to establish the existence of such a policy." *Id.* at 875.

Here, though, Plaintiffs connect the failure-to-train allegation to their other *Monell* claim: that other incidents of misconduct have occurred over the last several years and the CCBOE has failed to respond to each of these instances, resulting in Doe's abuse. *See* Am. Compl. ¶ 28. Further, the Complaint alleges that other CCBOE employees knew or suspected misconduct and failed to report it, which allowed Curry to continue assaulting Doe. *Id.* at ¶¶ 7, 18. The need to provide training to teachers and aides regarding sexual assault prevention and reporting for nonverbal special-needs student is plainly obvious. These allegations are admittedly undeveloped, and Plaintiffs will be required to prove them as this action moves forward. Yet, for

_____

claim. As such, the Court will use both this Response and the Renewed Response where applicable.

[2] Plaintiffs allege alternative theories of *Monell* liability, which the Court need not address at this stage because they have adequately alleged at least one theory.

the limited purpose of a motion to dismiss, Plaintiffs have sufficiently stated a claim under *Monell. See Davis v. Milton Police Dep't*, No. 20-0036, 2020 WL 2341238 at *11 (S.D.W. Va. May 11, 2020). Accordingly, as to the *Monell* claim, the Motion is **DENIED**.

B. Statutory Immunity

        Defendant asserts that it is statutorily immune from Counts II, IV, V, VIII, and IX. The West Virginia Government Tort Claims Act ("GTCA") immunizes political subdivisions from civil lawsuits in certain situations. *See* W. Va. Code Ann. § 29-12A-1 *et seq*. Under the statute, political subdivision includes county boards of education. *See id.* § 29-12A-3(c). "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id.* at § 29-12A-4(b)(1). Therefore, the CCBOE is immune from any intentional conduct it may have taken as an entity, despite Plaintiffs' assertions to the contrary. *See Zirkle v. Elkins Road Public Service Dist.*, 655 S.E.2d 155 ("We therefore conclude that claims of intentional and malicious acts are included in the general grant of immunity in W.Va. Code, 29–12A–4(b)(1). Only claims of negligence specified in W. Va. Code, 29–12A–4(c) can survive immunity from liability under the general grant of immunity in W. Va. Code, 29–12A–4(b)(1)))." Of course, the GTCA's general grant of immunity is subject to certain enumerated exceptions including:

> (1) when the injury is caused by the negligent operation of any vehicle by its employees when engaged within the scope of their employment and authority; (2) when the injury is the result of negligence by an employee acting within the scope of employment; (3) when the injury is caused by the negligent failure of the political subdivision to keep public roads, streets, sidewalks, and other related pathways and grounds open and in good repair; (4) when the injury is caused by the negligence of its employees and it occurs on or within the grounds of the buildings used by the political subdivision; and (5) when liability is expressly imposed upon the political subdivision by another provision of the West Virginia Code."

*P.A. v. Fayette Cnty. Bd. of Educ.*, 2020 WL 4740481 at \*8 (S.D.W. Va. Aug. 14, 2020) (citing W. Va. Code § 29-12A-4(c)(1)-(5)).

Thus, the CCBOE may be liable for "injury, death, or loss to persons or property caused by the *negligent* performance of acts by their employees while acting within the scope of employment." *Id.* § 29-12A-4(c)(2) (emphasis added). However, "[s]imply put, West Virginia political subdivisions are not liable for the intentional malfeasance of their employees." *Jones v. Bd. of Educ. of Putnam Cnty., W. Va.*, 432 F. Supp. 3d 635, 647 (S.D.W. Va. 2020) (internal citations omitted).

> i. Counts IV (Intentional Infliction of Emotional Distress), VIII (Aiding and Abetting Civil Assault), and IX (Aiding and Abetting Civil Battery)

This explanation of the grant of immunity in the GTCA is sufficient to resolve Counts IV, VIII, and IX, because each of these Counts alleges a tort that is, by definition, intentional[3] on the part of the CCBOE itself and by its employee. Further, "a mere allegation of negligence does not turn an intentional tort into negligent conduct," *Weigle v. Pifer*, 139 F. Supp. 3d 760, 780 (S.D.W. Va. 2015) (internal quotation marks and citation omitted). As the Counts alleged are intentional torts, municipal liability will not lie for Plaintiffs' claims of intentional infliction of emotional distress[4], aiding and abetting civil assault, and aiding and abetting civil battery. Accordingly, the Motion, as to Counts VIII and IX is **GRANTED**.

---

[3] Aider and abettor liability is only for those counts that adequately plead an underlying tort. Further, it is only applicable when one "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself…." Restatement Second of Torts § 876(b). While West Virginia has recently recognized aider-and-abettor liability in a civil tort context, *Boone v. Activate Healthcare, LLC*, 859 S.E.2d 419, 425 (W. Va. 2021), because Defendant is immune here from the underlying intentional tort, it would defeat the purposes of immunity to allow Defendant to be held liable in this capacity, for "knowingly aiding and abetting" an intentional tort. Am. Compl. ¶¶ 65, 68, 71, 72.

[4] The Court recognizes that, in West Virginia, a claim of "intentional" infliction of emotional distress can be proven either by intentional or reckless behavior. *See* Syl. Pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692 (W. Va. 1982). However, reckless

### ii. Counts II (State Constitutional Tort) and V (Violation of the WVHRA)

#### a. Count II (State Constitutional Tort)

The West Virginia Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W.V. const., art. III, § 10. But even where a cause of action exists under Article III § 10 of the West Virginia Constitution, the GTCA may be a shield. *See* Syl. Pt. 2*, Hutchinson v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996) ("Unless barred by one of the recognized statutory, constitutional or common law immunities, a private cause of action exists where a municipality or local governmental unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution."). Accordingly, the provisions of the GTCA apply in full to the state constitutional claim. However, unlike the intentional tort claims, Plaintiffs have alleged negligent behavior by the Board that could serve as a basis for liability for this claim.[5] At this stage, the unchallenged[6] assertions of negligence are sufficient, and the Motion is **DENIED**.

---

behavior still requires behavior that is more than negligence. *See* Syl. Pt. 2, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998) (requiring plaintiff to prove that the defendant acted intentionally or "recklessly when it was certain or substantially certain emotional distress would result from his conduct…") As such, per *Zirkle*, the CCBOE may not be held liable.

[5] Plaintiffs allege that the CCBOE "did not advise the victim's parents with respect to the original incident… because Defendants knew the victim could not communicate what had occurred to his parents or others because of his disability." Am. Compl. ¶ 47. The Court agrees that because this specific allegation of discrimination is explicitly couched in intentional terms, it is insufficient to state a claim. *See Jones*, 432 F. Supp. 3d 635, 647-48. However, Plaintiffs have also alleged a range of negligent conduct in Count III which Defendant did not challenge and could constitute discrimination.

[6] Defendant challenged the sufficiency of the allegations in this Count by alleging that Plaintiffs have failed to an adequate allege policy or custom to impose state constitutional liability, but as discussed above, that argument fails.

*b. Count V (Violation of the WVHRA)*

Defendant contends that it is entitled to statutory immunity from the WVHRA claim because the underlying allegations involve only Defendant Curry's intentional conduct. Def.'s Mem. at 14-15. Plaintiffs respond that they have alleged negligent and intentional acts which can constitute the basis for liability here. Pls.' Resp. at 18.

Under the WVHRA, it is unlawful for "any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to ... [r]efuse, withhold from or deny to any individual because of his or her ... disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges, or services of the place of public accommodations." W. Va. Code § 5-11-9(6)(A). An exception to the statutory immunity grant given by the GTCA exists "when liability is expressly imposed upon the political subdivision by another provision of the West Virginia Code." W. Va. Code Ann. § 29-12A-(c)(5). The WVHRA is a statute which "expressly imposes liability upon [a county board of education] and the immunity afforded by the GTCA does not apply." *P.A.*, 2020 WL 4740481, at *8. Accordingly, Defendant could be liable for its actions under this provision, and the Motion must be **DENIED**.

C. Count VI: Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA") and Count VII: Violation of the Rehabilitation Act

 Both the ADA and Section 504 of the Rehabilitation Act prohibit discrimination against qualified individuals with disabilities. *See* 42 U.S.C. § 12132 (ADA) ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); 29 U.S.C. § 794(a) (Section 504) ("No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."). The ADA permits plaintiffs to seek money damages against public entities that have engaged in disability discrimination, whereas Section 504 permits plaintiffs to seek money damages from entities that receive federal funds. *See Barnes v. Gorman*, 536 U.S. 181, 184–96 (2002).

Courts "construe the ADA and Rehabilitation Act to impose similar requirements. Thus, despite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). A plaintiff asserting a claim of disability discrimination under either Act "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Halpern*, 669 F.3d at 461.

Defendant's sole argument is that Plaintiffs' claim fails where they simply recite legal conclusions and do not sufficiently allege that Doe's "particular medical ailments fit within the statutory scheme that exists under the ADA and Rehab Act." Def.'s Mem. at 17. Plaintiffs contend that they have pleaded facts supporting Doe's medical ailments, such as the facts that he "has severe special needs requiring an aide," "is a qualified individual with a disability," that the "disability substantially limits one or more major life activities," and that he is nonverbal. Pls.' Resp. at 20 (quoting Compl. ¶¶ 5, 34, 35, 40, 41, 46).[7]

---

[7] Plaintiffs' Renewed Response did not address these contentions but incorporated by reference their initial response. The paragraphs quoted in the original Complaint survive in the Amended Complaint as ¶¶ 5, 47, 48, 53, 54, 59.

Given that examples of "major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking… speaking, breathing, learning, reading, concentrating, thinking, communicating….," Plaintiffs' assertion that John Doe is nonverbal and has severe special needs is enough to allege that he is a qualified individual for ADA purposes. 29 C.F.R. § 1630.2(i)(i). Further, he was place in a special-needs classroom and allegedly assaulted by a special-needs aide. This shows that the school recognized that he had a disability. Given the direction to interpret "disability" broadly, the Court finds that Plaintiffs have sufficiently alleged John Doe's disability to survive a motion to dismiss. 42 U.S.C. § 12102(4)(A). Accordingly, the Motion as to these Counts is **DENIED**.

D. Punitive Damages

The last issue to address is Plaintiffs' claim for punitive damages. West Virginia law prohibits awards of punitive damages against political subdivisions. *See* W. Va. Code Ann. § 29-12A-7. However, the limitation on punitive damages is not applicable to claims "based upon alleged violations of the constitution or statutes of the United States[.]" *Id*. § 29-12A-18(e). Here, Plaintiffs have plausibly alleged a violation under the United States Constitution and have filed that claim pursuant to 42 U.S.C. § 1983. Accordingly, at this point, Plaintiffs' claim for punitive damages may stand and Defendant's Motion to Dismiss as to them is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Defendant CCBOE's Motion to Dismiss (ECF No. 49) is **GRANTED IN PART** and **DENIED IN PART**. As to Counts I, II, V, VI, and VII the Motion is **DENIED**. As to Counts IV, VIII, and IX, the Motion is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        February 24, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE