IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JANE DOE and J. DOE,
as parent, natural guardians
and next friends of JOHN DOE,

                Plaintiffs,

v.                                           CIVIL ACTION NO.  3:21-0031

CABELL COUNTY BOARD OF EDUCATION and
JASON CURRY,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Jason Curry's Motion to Dismiss Amended Complaint (ECF No. 47). For the reasons herein, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. FACTUAL BACKGROUND**

On October 6, 2021, Plaintiffs Jane Doe and her husband J. Doe filed an amended complaint on behalf of their minor son, John Doe. Plaintiffs alleged that their son, a severe-special-needs middle schooler at a Cabell County school, was inappropriately touched by his teacher's aide, Mr. Curry, on two separate occasions. *See e.g.*, Am. Compl. The first incident occurred on October 15, 2019. *See id*. ¶ 6. A special-needs teacher witnessed the event. *Id*. ¶ 7. The victim, who is nonverbal, was unable to tell his parents about the assault; the victim's parents were not told or otherwise advised by the school about the incident. *Id*. ¶¶ 8-9. School

personnel did not document the October incident. *Id.* ¶ 10.

A second incident of inappropriate touching occurred on November 22, 2019. *Id.* ¶ 11. The school principal reported the second incident to the Cabell County Sheriff's Department. *Id.* ¶ 12. The Sheriff's Department created an incident report of "forcible fondling" based on witness accounts. *Id.* ¶¶ 11, 13. In a meeting on the same day, the principal advised Plaintiffs of the second incident and mentioned in passing that he had previously advised Curry not to let John Doe sit on his lap. *Id.* ¶ 14. On November 22, 2019, school personnel also prepared an incident report regarding the events in October, though those details were never shared with the victim's parents. *Id.* ¶ 15.

On November 25, 2019, the Cabell County prosecutor charged Curry with sexual abuse. *Id.* ¶ 16. At a meeting with the Prosecuting Attorney's Office, Plaintiffs learned for the first time of the October incident. *Id.* ¶ 17. Plaintiffs had not previously been advised of details, nor had they seen an incident report regarding the events. *Id.* Soon thereafter, Plaintiffs learned that an aide in the victim's general education room told another aide and teacher that she suspected Curry was "doing things" to the victim. *Id.* ¶ 18. Despite the Cabell County Board of Education ("CCBOE") (and its agents) being mandatory reporters of sex crimes against minors, the original October assault was not reported to the authorities. *Id.* ¶ 19.

Plaintiffs filed a complaint alleging the following causes of action against Curry and the CCBOE: Violation of 42 U.S.C. § 1983 (Count I); State Constitutional Tort (Count II); Negligence (Count III); Tort of Outrage/Reckless Infliction of Emotional Distress (Count IV); Disability Discrimination in Violation of West Virginia Human Rights Act (Count V); Disability Discrimination in Violation of Americans with Disabilities Act (Count VI); Violation of the Rehabilitation Act (Count VII); Civil Assault and Aiding and Abetting Civil Assault (Count

VIII); Civil Battery and Aiding and Abetting Civil Battery (Count IX). Curry moved to dismiss Plaintiffs' official-capacity claims in Counts I, and Counts III, IV, V, VI, and VII.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

## III. ANALYSIS

A. Count I: 42 U.S.C. § 1983

Curry first argues that Plaintiffs' Section 1983 claims must be dismissed against him in his official capacity, as they are improperly duplicative to claims against the CCBOE, and that Plaintiffs have failed to state a claim in support of an official-capacity theory of liability. Def.'s Mem. in Supp. at 5, ECF No. 48. Plaintiffs respond that they are suing Curry in his individual capacity for this Count, not in his official capacity. Pls.' Renewed Resp. at 5-6, ECF No. 53[1]. Given that a plaintiff in a Section 1983 complaint is not required to specifically state whether a defendant was sued in his individual or official capacity, Plaintiffs have the right to now clarify that they are asserting claims against Curry in his individual capacity. *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). Accordingly, the motion to dismiss the claims in Curry's official capacity is **DENIED AS MOOT**.

B. Count III: Negligence

Curry asserts that Plaintiffs' allegations of negligence against him, individually, fail because they are predicated on his alleged intentional conduct, and the inclusion of a blanket assertion of negligence does not change the nature of the underlying allegations. Def.'s Mem. in Supp. at 7-8. Plaintiffs respond that they are allowed to allege alternative theories. Pls.' Renewed Resp. at 7-8. *See also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

---

[1] Plaintiffs challenge Defendant's characterization of their pleadings with respect to whether they have alleged sufficient facts to state a claim against Defendant in his individual capacity, but the issue is not before the Court. Defendant has only moved to dismiss the claim against him in his official capacity.

In the Amended Complaint all alleged acts involve Curry's intentional conduct – namely that he inappropriately touched and sexually assaulted John Doe. Specifically, Plaintiffs allege that he "touched the then 12 year-old in a profoundly inappropriate manner" constituting sexual assault, civil assault, and civil battery, all of which are intentional torts. Am. Compl. at ¶¶ 6, 65, 71. *See e.g., Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581 (W. Va. 1988) (holding that sexual abuse upon a minor amounts to intentional rather than negligent conduct in the context of interpreting an insurance policy "intentional injury" exclusion,); *see also McKenzie v. Sevier*, 854 S.E.2d 236, 246 (W. Va. 2020) ("Battery is an intentional tort premised on the intent to act and the intent to bring about consequences, as opposed to negligently acting and bringing about consequences that should have been foreseeable to the tortfeasor."); *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004) (quoting Restatement (Second) of Torts (Am. Law Inst. 1965)) ("An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.")).

A plaintiff cannot "prevail on a claim of simple negligence based on [a defendant's] intentional act." *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013) (citing *Stone v. Rudolph*, 32 S.E.2d 742, 748 (W. Va. 1944) (noting that "intentional acts are not encompassed by general negligence principles")); *Weigle v. Pifer*, 139 F. Supp. 3d 760, 780 (S.D.W. Va. 2015) ("A mere allegation of negligence does not turn an intentional tort into negligent conduct.") (citations omitted). "Conduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor." *Weigle*, 139 F. Supp. 3d at 780. "Intentional torts, as distinguished from negligent or reckless

torts ... generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger,* 523 U.S. 57, 62 (1998) (emphasis in original) (quoting Restatement (Second) of Torts § 8A, cmt. a). It is apparent from the allegations in the Amended Complaint that Curry intended the consequences of his action.

Plaintiffs' additional conclusory allegations that Curry was negligent in "(a) failing to prevent the victim from being sexually assaulted, (b) failing to take steps to stop the sexual assaults suffered by the victim, and (c) failing to report the initial sexual assaults…." do not change this. Am. Compl. at ¶ 40. As alleged, Defendant intended to sexually assault the victim, and any subsequent failure to report or prevent this is part of that same intentional, criminal conduct. As such, while his actions may give rise to an intentional tort, they do not also give rise to a claim of negligence. The negligence claim against Curry must be dismissed. On this Count, the Motion is **GRANTED**.

## C. Count IV: Tort of Outrage/Reckless Infliction of Emotional Distress ("IIED")

Curry asserts that Plaintiffs' state law IIED claim is duplicative of the assault and battery claims. Def.'s Mem. in Supp. at 9. Plaintiffs respond that Curry's denial of liability for civil assault and battery precludes his argument for dismissal of the IIED claim. Pls.' Renewed Resp. at 8. They note that their IIED claim "may indeed be duplicative of the damages available for Plaintiff's [sic] Assault and Battery claims," but assert that at the very least, the Court should the issue in abeyance until the facts have been more fully developed. *Id.*

As the Supreme Court of Appeals of West Virginia has recognized, "Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories." *Harless v. First Nat. Bank in Fairmont*, Syl. Pt. 7, 289 S.E.2d 692 (W. Va. 1982).

Additionally, "[b]ecause an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for the tort of outrageous conduct is duplicitous of a claim for assault and battery, where both claims arise from the same event." *Criss v. Criss*, Syl. Pt. 4, 356 S.E.2d 620 (W. Va. 1987). Courts in this district have applied this principle to motions to dismiss in cases where a plaintiff's assault and battery claim(s) stemmed from the same event as their IIED claim. *See Pearson v. Thompson,* No. 2:19-CV-00321, 2019 WL 4145613, at * 2 (S.D.W. Va. Aug. 29, 2019); *Kelly v. West Virginia Regional Jail*, No. 2:18-cv-01074, 2019 WL 2865863, at *1 (S.D. W. Va. July 2, 2019); *Searls v. West Virginia Regional Jail & Correctional Facility*, No. 3:15-cv-9133, 2016 WL 4698547, at *1 (S.D.W. Va. Sept. 7, 2016).

Here, in Counts VIII and IX, Plaintiffs allege that both Defendants are liable for assault and battery based on the alleged sexual assault. *See* Am. Compl. at ¶ 65, 71. In Count IV, Plaintiffs only reincorporate the preceding paragraphs and add that "Defendants' extreme and outrageous misconduct toward the victim and Plaintiffs was unsettling given the circumstances and caused severe emotional distress and bodily harm." *Id*. at ¶ 44. But this misconduct is the sexual assault that forms the basis of the assault and battery claims.[2] A plain reading of the Complaint indicates that Plaintiffs are seeking to recover under the IIED claim for the exact events that they are seeking recovery from under their assault and battery claims. As such, for this Count, the Motion is **GRANTED**.

---

[2] To the extent that Plaintiffs assert that their IIED claim is also supported by Curry's failure to self-report his sexual abuse and assault, this behavior is, in this context, a continuation of the same underlying sexual assault and not supported by a plain reading of the Complaint.

D. Count V: Disability Discrimination in Violation of West Virginia Human Rights Act ("WVHRA")

    *i. Allegations of Disability*

    Firstly, Defendant argues that Plaintiffs have failed to plead sufficient facts to demonstrate that John Doe has a disability for the purposes of the WVHRA. Def.'s Mem. in Supp. at 10-11. Plaintiffs contend that they have plead facts supporting Doe's medical ailments. Pls.' Renewed Resp. at 10. The Amended Complaint alleges that John Doe "has severe special needs requiring an aide," "is a qualified individual with a disability," that the "disability substantially limits one or more major life activities," and that he is nonverbal. Am. Compl. ¶¶ 4, 34, 35, 40, 41, 46. Given that examples of "major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking… speaking, breathing, learning, reading, concentrating, thinking, communicating…." Plaintiffs' assertions that John Doe is nonverbal and has severe special needs is enough to allege that he is a qualified individual for ADA purposes. *See* 29 C.F.R. § 1630.2(i)(i). Further, he was placed in a special-needs classroom and allegedly assaulted by a special-needs aide. This shows that the school recognized that he had a disability. Given the direction to interpret "disability" broadly, the Court finds that the Plaintiffs have sufficiently alleged John Doe's disability to survive a motion to dismiss. 42 U.S.C. § 12102(4)(A).

    *ii. Discrimination because of a Disability*

    The WVHRA provides that it is an unlawful discriminatory practice for any agent or employee of any place of public accommodations to "refuse, withhold from, or deny to any individual because of his… disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations." W. Va. Code. Ann. § 5-11-9(6). A school is a place of public accommodation. *Id.* at § 5-11-3(j). Because

the law forbids discrimination on the basis of a prohibited characteristic, "a cause of action under the WVHRA must be predicated upon an unlawful motivation, not simply an unlawful injury." *Arbaugh v. Bd. of Educ., Cnty of Pendleton*, 329 F. Supp. 2d 762, 772 (N.D.W. Va. 2004).

Defendant argues that Plaintiffs' claim under the WVHRA is insufficient because there are no facts demonstrating that Curry sexually abused Doe because of any actual or perceived disability, or that Doe was deprived of educational benefits because of his disability. Def.'s Mem. in Supp. at 10-11. Here, the Complaint specifically alleges that "Defendants did not advise the victim's parents with respect to the original incident… because Defendants knew the victim could not communicate what had occurred to parents because of the victim's disability." Am. Compl. ¶ 47. It also states that "Defendants otherwise took advantage of Plaintiffs because of the victim's disability." *Id*. at ¶ 48. These are specific allegations that, at this stage, allege that Curry chose Doe as his victim specifically because his disability made him unable to share the experience. This would constitute discrimination based on Doe's disability; because Curry knew that any sexual abuse committed would remain secret unless he was caught in the act. Thus, the Motion is **DENIED** as to this Count.

E. Count VI: Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA") and Count VII: Violation of the Rehabilitation Act

Both the ADA and Section 504 of the Rehabilitation Act prohibit discrimination against qualified individuals with disabilities. *See* 42 U.S.C. § 12132 (ADA) ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); 29 U.S.C. § 794(a) (Section 504) ("No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

9

under any program or activity receiving Federal financial assistance....”). The ADA permits plaintiffs to seek money damages against public entities that have engaged in disability discrimination, whereas Section 504 permits plaintiffs to seek money damages from entities that receive federal funds. *See Barnes v. Gorman*, 536 U.S. 181, 184–96 (2002).

Courts “construe the ADA and Rehabilitation Act to impose similar requirements. Thus, despite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability.” *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). A plaintiff asserting a claim of disability discrimination under either Act “must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability.” *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Halpern*, 669 F.3d at 461.

Curry argues that Plaintiffs’ claims for disability discrimination in violation of the ADA and Rehabilitation Act must be dismissed because no remedies exist against Curry in his official or individual capacity. *See* Def.’s Mem. in Supp. at 11-12. In their Renewed Response, Plaintiffs did not address these claims, but in their original response, Plaintiffs conceded that Curry could only be held liable in his official capacity. *See* Pls.’ Resp. at 9-10, ECF No. 22.

Personal-capacity damages are not available under the ADA or Section 504 against individuals who are not employers. *See Baird v. Rose*, 192 F.3d 462, 471–72 (1999) (reasoning that “[b]ecause Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for

10

conduct protected by the ADA"); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n. 9 (4th Cir. 1995) (applying same analysis to the ADA and Section 504 "[b]ecause the language of the two statutes is substantially the same"). In addressing these official-capacity claims, Curry focuses on the duplicative nature of the claims and Plaintiffs' lack of standing. "Yet their arguments sidestep Plaintiffs' much more clear-cut jurisdictional shortcoming: that '[a]n official-capacity suit is a suit for injunctive relief.'" *Jones v. Bd. of Educ. of Putnam County*, 432 F. Supp. 3d 635, 644 (S.D.W. Va. 2020) (quoting *Bess v. Kanawha Cnty. Bd. of Educ.*, No. 2:08-cv-01020, 2009 WL 3062974, at *9 (S.D.W. Va. Sept. 17, 2009)). Plaintiffs unambiguously do not seek any injunctive relief. Am. Compl. at 12, 13. As such, dismissal of Plaintiffs' federal claims is warranted with respect to Curry, and the Motion is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant Curry's Motion to Dismiss (ECF No. 47) is **GRANTED IN PART** and **DENIED IN PART**. With respect to Counts I and V, the Motion is **DENIED**. With respect to Counts III, IV, VI, and VII the Motion is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        February 24, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE